IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHERI CASTALDO on behalf of herself and all other persons similarly situated, known and unknown, | ) ) ) ) | Case No. |
| Plaintiff, | ) ) ) | Judge |
| v. | ) ) | Magistrate Judge |
| UNCLE JULIO'S CORPORATION and UNCLE JULIO'S OF ILLINOIS, INC., | ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Cheri Castaldo ("Plaintiff"), on behalf of herself and all other persons similarly situated, known and unknown, through her attorneys, and for her complaint against Defendants Uncle Julio's Corporation and Uncle Julio's of Illinois, Inc. ("Defendants"), states as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*, for Defendants' failure to pay Plaintiff and other similarly-situated restaurant servers all earned minimum wages.

2. Along with its subsidiary companies,[1] Defendant Uncle Julio's Corporation owns and operates twenty-one (21) "Uncle Julio's" Mexican restaurants located in Illinois, Texas, Georgia, Maryland, Virginia, and Florida.

---

[1] One of these subsidiary companies is the other Defendant in this case, Uncle Julio's of Illinois, Inc. Defendant Uncle Julio's Corporation owns and operates its Illinois restaurants, including its restaurant in Skokie, Illinois, where Plaintiff worked, with Defendant Uncle Julio's of

1

3. Along with its subsidiary companies, Defendant Uncle Julio's Corporation has a policy and practice of paying its servers sub-minimum hourly wages under the tip-credit provisions of federal and, where it exists, state law.

4. Under the tip-credit provisions of the FLSA, an employer of tipped employees may, in limited circumstances, pay those employees less than the minimum hourly wage and take a "tip credit" against its minimum wage obligations. But an employer is not permitted to take a tip credit against its minimum wage obligations in any of the following circumstances: (1) when it fails to inform tipped employees of the provisions of the tip-credit subsection of the FLSA; (2) when it requires its tipped employees to perform non-tipped work that is *unrelated* to the employee's tipped occupation; or (3) when it requires its tipped employees to perform non-tipped work that, although *related* to the employee's tipped occupation, exceeds 20 percent of the employees' time worked during a shift. *See, e.g.,* 29 U.S.C. § 203(m) (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection"); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (Posner, J.) (explaining that when tipped employees perform "non-tipped duties" that "are *unrelated* to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work") (emphasis added); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing *related* but non-tipped duties should be paid at the full minimum wage for that time").

5. Along with its subsidiary companies, Defendant Uncle Julio's Corporation has a

---

Illinois, Inc.

2

policy and practice of paying its servers sub-minimum, tip-credit wages even though it fails to inform them of the tip-credit provisions of the FLSA.

6. Defendant Uncle Julio's Corporation and its subsidiary companies' policy and practice of paying its servers sub-minimum, tip-credit hourly wages, without informing them of the tip-credit provisions of the FLSA, violates the minimum wage provisions of the FLSA.

7. Along with its subsidiary companies, Defendant Uncle Julio's Corporation has a policy and practice of paying its servers sub-minimum, tip-credit wages when it requires those employees to perform non-tipped work that is *unrelated* to their tipped occupation, such as sweeping floors and sorting, polishing, and rolling silverware.

8. Even if the non-tipped work Defendant Uncle Julio's Corporation and its subsidiaries require their servers to perform were *related* to the servers' tipped occupations, Defendant and its subsidiaries have a policy and practice of requiring their servers to perform this non-tipped work for more than 20 percent of their time worked each workweek.

9. Defendant Uncle Julio's Corporation and its subsidiary companies' policy and practice of requiring servers to perform certain *types* or *excessive amounts* of non-tipped work while paying them sub-minimum, tip-credit wages violates the minimum wage provisions of the FLSA and IMWL.

**JURISDICTION AND VENUE**

10. This Court has federal question jurisdiction over Plaintiff's FLSA claims, which arise under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. § 1331.

11. This Court has supplemental jurisdiction over Plaintiff's IMWL claims pursuant to 28 U.S.C. § 1367.

3

12. Venue is proper in this judicial district because the facts and events giving rise to Plaintiff's claims occurred in this judicial district. 28 U.S.C. § 1391.

## THE PARTIES AND GENERAL FACTUAL ALLEGATIONS

13. Defendant Uncle Julio's Corporation is a Texas corporation.

14. Defendant Uncle Julio's Corporation's principal place of business is located at 1101 N. Union Bower Road, Suite 160, Irving, Texas 75061-5850.

15. Defendant Uncle Julio's of Illinois, Inc. is an Illinois corporation.

16. Defendant Uncle Julio's of Illinois, Inc.'s principal place of business is located at 1101 N. Union Bower Road, Suite 160, Irving, Texas 75061-5850.

17. Plaintiff resides in and is domiciled in Cook County, Illinois, which is located in this judicial district.

18. Plaintiff worked as a server at Defendants' Skokie, Illinois restaurant from approximately October 1, 2014 to August 24, 2015.

19. Except for her initial training, which lasted approximately one week, Plaintiff was paid $4.95 per hour by Defendants to work as a server. *See* Exhibit A, representative earnings statement for Plaintiff.

20. While paying her a sub-minimum, tip-credit hourly wage, Defendants required Plaintiff to spend over 20 percent of her time each workweek as a server – and typically at least 25 percent – performing non-tipped "side-work," such as:

- sweeping the floor around her tables;
- Wiping down tables with a towel and sanitizer;
- taking dirty dishes to the dishwasher;
- restocking sweetener packets;

- refilling Tabasco and Worcestershire bottles and cleaning them with a towel and sanitizer;
- restocking the to-go station with to-go containers and bags and wiping the to-go station table with a towel and sanitizer;
- wiping down serving trays with a towel and cleaning solution;
- restocking the remote server stations with sugar caddies, check presenters, straws, silverware, beverage napkins, linen, loose silverware, plates, to-go boxes, and bags;
- empting salt and pepper shakers or sugar caddies so they could be washed, or refilling them after they had been washed;
- brewing coffee or iced tea;
- sorting knives, forks, and spoons after they are run through the dishwasher, polishing the sorted utensils, and "rolling" silverware sets, which consists of placing a knife, fork, and spoon in a cloth napkin and rolling it in a particular fashion; and
- placing chairs on top of tables or removing them and placing them underneath tables.

21. When she was busy performing non-tipped side-work, such as that described in Paragraph 20, Plaintiff did not have the opportunity to interact with customers or earn tips.

22. Plaintiff typically spent one to two hours each shift sorting, polishing, and rolling silverware alone.

23. When Plaintiff worked as an "opener" for the lunch shift, she was required to arrive at the restaurant approximately 45 minutes before it opened to customers to perform opening side-work, such as removing chairs from tables and placing them underneath, wiping down tables with a towel and sanitizer; placing salt and pepper shakers on tables; placing silverware sets on tables; brewing coffee and tea; stocking ice; getting lemons from the bartender and placing at the server stations, and stocking creamer packets. In addition, for the first four to five months of her employment, after completing her opening side-work, on Mondays Plaintiff was required to perform food prep work in the kitchen, such as peeling and removing seeds from peppers, deveining chicken, and removing stems from spinach.

24. At the end of a lunch shift, Plaintiff was required to perform shift change side-work, such as stocking server stations, sorting, polishing, and rolling silverware, getting cups from the kitchen and stacking them in the server stations, and stocking items in the to-go station.

25. When Plaintiff worked dinner shifts, she had to perform side-work after being "cut" from serving customers. For example, at times Plaintiff would get cut from serving customers at approximately 9:00 p.m., and not be able to check out for the night until after 11:00 p.m. During the two plus hours after she was cut, Plaintiff was required to sort, polish, and roll silverware and restock items in the server and to-go stations.

26. Defendants maintain published lists at their Skokie, Illinois restaurant detailing many of the side-work duties servers were required to perform.

27. During her initial training, Plaintiff was instructed on the side-work duties she would be required to perform at Defendants' restaurant.

28. Plaintiff's server training was led by representatives from Defendant Uncle Julio's Corporation in Texas.

29. During server training, Plaintiff was given a "Server Training Manual" from Defendant Uncle Julio's Corporation. On information and belief, servers at all of Defendant Uncle Julio's Corporation's restaurants receive this Server Training Manual.

30. Also during server training, Plaintiff was given an Uncle Julio's Corporation Policy Manual that identifies Defendant Uncle Julio's Corporation's as Plaintiff's employer. On information and belief, servers at all of Defendant Uncle Julio's Corporation's restaurants receive this Policy Manual.

31. Defendant Uncle Julio's Corporation Policy Manual sets numerous employment policies that apply to servers working at *any* Uncle Julio's restaurant location.

32. According to its Policy Manual, Defendant Uncle Julio's Corporation maintains personnel files for all employees and retains "ultimate discretion" to decide which documents go in an employee's personnel file.

33. Defendant Uncle Julio's Corporation and its subsidiary companies, including Defendant Uncle Julio's of Illinois, Inc., are engaged in related activities performed for a common business purpose, through unified operation or common control.

## COUNT I
## Violation of the Fair Labor Standards Act – Minimum Wages
## Collective Action

Plaintiff reincorporates the previous allegations of this Complaint as if fully set forth in this Count I.

34. This count arises from Defendants' violation of the FLSA for their failure to pay minimum wages to Plaintiff and other similarly-situated servers.

35. Plaintiff brings this Count I as a collective action.

36. Plaintiff's consent form to act as a representative plaintiff is attached as Exhibit B.

37. At no time during her employment by Defendants was Plaintiff exempt from the minimum wage provisions of the FLSA.

38. At all times relevant hereto, Plaintiff was an "employee" of Defendant Uncle Julio's Corporation, as defined by the FLSA. 29 U.S.C. § 203(e).

39. At all times relevant hereto, Plaintiff was an "employee" of Defendant Uncle Julio's of Illinois, Inc., as defined by the FLSA. 29 U.S.C. § 203(e).

40. At all times relevant hereto, Defendant Uncle Julio's Corporation's was Plaintiff's "employer" as defined by the FLSA. 29 U.S.C. § 203(d).

41. At all times relevant hereto, Defendant Uncle Julio's of Illinois, Inc. was Plaintiff's "employer" as defined by the FLSA. 29 U.S.C. § 203(d).

42. Defendant Uncle Julio's Corporation is an "enterprise" as defined by the FLSA. 29 U.S.C. § 203(r)(1).

43. Defendant Uncle Julio's of Illinois, Inc. is an "enterprise" as defined by the FLSA. 29 U.S.C. § 203(r)(1).

44. Defendant Uncle Julio's Corporation is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

45. Defendant Uncle Julio's of Illinois, Inc. is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

46. During the last three calendar years, Defendant Uncle Julio's Corporation's annual gross volume of sales made or business done has exceeded $500,000, exclusive of excise taxes.

47. During the last three calendar years, Defendant Uncle Julio's of Illinois, Inc.'s annual gross volume of sales made or business done has exceeded $500,000, exclusive of excise taxes.

48. Although Defendants took a tip credit against Plaintiff's minimum wages, Defendants failed to comply with the predicate requirements for doing so under the FLSA.

49. Defendants failed to inform Plaintiff of the tip-credit provisions of the FLSA.

50. Defendants regularly required Plaintiff to perform non-tipped work that was *unrelated* to her tipped occupation, such as sweeping floors and sorting, polishing, and rolling silverware, while failing to pay her full minimum hourly wages for that work.

51. Defendants required Plaintiff to perform non-tipped side-work in excess of 20 percent of her time worked each workweek while paying her sub-minimum, tip-credit hourly wages.

52. In one or more individual workweeks, Plaintiff's average hourly wages, excluding tips, fell below minimum wage.

53. Defendants are aware or should have been aware that federal law required them to pay Plaintiff full minimum wage because Defendants never informed Plaintiff of the tip-credit provisions of the FLSA.

54. Defendants are aware or should have been aware that federal law required them to pay Plaintiff full minimum wage when they required her to perform non-tipped side-work that (a) is *unrelated* to her tipped occupation or (b) exceeds 20 percent of her time worked during individual workweeks.

55. Defendants' willfully violated the FLSA by paying Plaintiff sub-minimum, tip-credit hourly wages (a) without informing her of the tip-credit provisions of the FLSA and (b) while requiring her to perform improper *types* and *excessive amounts* of non-tipped side-work.

WHEREFORE, Plaintiff, on behalf of herself and similarly-situated servers, prays for judgment against Defendants as follows:

    A. judgment in the amount of the owed minimum wages for all time worked by Plaintiff and similarly-situated servers;

    B. liquidated damages in an amount equal to the amount of unpaid minimum wages;

    C. reasonable attorneys' fees and costs incurred in prosecuting this action; and

    D. such other and further relief as this Court deems just and proper.

## COUNT II
### Violation of the Illinois Minimum Wage Law – Minimum Wages
### Illinois Class Action

Plaintiff reincorporates the previous allegations of this Complaint as if fully set forth in this Count II.

56. This count arises from Defendants' willful violation of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*, for Defendants' failure to pay Plaintiff and the class of servers that she seeks to represent (the "Class") all their earned minimum wages.

57. At all times relevant hereto, Plaintiff was an "employee" of Defendant Uncle Julio's Corporation, as defined by the IMWL. 820 ILCS 105/3(d).

58. At all times relevant hereto, Plaintiff was an "employee" of Defendant Uncle Julio's of Illinois, Inc., as defined by the IMWL. 820 ILCS 105/3(d).

59. At all times relevant hereto, Defendant Uncle Julio's Corporation was Plaintiff's "employer" as defined in the IMWL. 820 ILCS 105/3(c).

60. At all times relevant hereto, Defendant Uncle Julio's of Illinois, Inc. was Plaintiff's "employer" as defined in the IMWL. 820 ILCS 105/3(c).

61. At all times relevant hereto, Plaintiff was not exempt from the minimum wage provisions of the IMWL.

62. Plaintiff and the Class are current and former servers who worked at Defendants' Illinois restaurants in the last three (3) years and who were paid sub-minimum, tip-credit hourly wages under the IMWL. Plaintiff brings this Count II as a class action under Rule 23 of the Federal Rules of Civil Procedure.

63. In one or more individual workweeks, Defendants paid Plaintiff and the Class of servers an hourly rate less than the Illinois minimum wage.

64. Under the IMWL, an employer may take a tip credit against the minimum wages of an employee if the employee is "engaged in an occupation in which gratuities have customarily and usually constituted and have been recognized as part of the remuneration for hire purposes." 820 ILCS 105/4(c).

65. Defendants have a practice of regularly using servers to perform non-tipped side-work, including sweeping floors and sorting, polishing, and rolling silverware, while continuing to pay those employees sub-minimum, tip-credit hourly wages.

66. Defendants' policy and practice of paying servers sub-minimum, tip-credit hourly wages while requiring them to perform non-tipped side-work violates the minimum wage provisions of the IMWL.

67. Defendants have employed more than forty (40) servers at their Illinois restaurants during the last three years.

68. Plaintiff and the Class are equally affected by the minimum wage violations of Defendants, and the relief sought is for the benefit of the Plaintiff and the Class.

69. The issues involved in this lawsuit present common questions of law and fact, such as: (a) whether Defendants pay their Illinois servers sub-minimum, tip-credit hourly wages; whether Defendants require their servers to perform non-tipped side-work; and whether Defendants violated the IMWL by requiring their servers to perform non-tipped side-work while paying them sub-minimum, tip-credit hourly wages. These common questions of law and fact predominate over the variations which may exist between members of the Class, if any.

70. Plaintiff and the Class on one hand, and Defendants on the other, have a commonality of interest in the subject matter of this lawsuit and remedy sought, namely back wages plus additional damages, interest, attorneys' fees and the cost of this lawsuit.

71. If individual actions were required to be brought by each member of the Class who was injured or affected, it would necessarily result in multiplicity of lawsuits, creating a hardship to the individuals and to the Court, as well as to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

72. The books and records of Defendants are material to Plaintiff's action as they disclose the hours worked by Plaintiff and each member of the purported Class and the rate of pay for that work.

73. Plaintiff and her counsel are able to fairly and adequately represent and protect the interests of the Class.

74. Defendant violated the IMWL by failing to compensate Plaintiff and the Class consistent with the minimum wage provisions of the law.

75. Courts in the Northern District of Illinois routinely grant class certification in similar cases alleging violations of the tip-credit provision of the IMWL. *See, e.g., Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 311 (N.D. Ill. 2010) (granting class certification on non-tipped duties claim) and *Driver,* No. 06 C 6149, 2012 U.S. Dist. LEXIS 27659, *15 (N.D. Ill. Mar. 2, 2012) (decertification denied); *Clark v. Honey-Jam Cafe, LLC*, 11 C 3842, 2013 WL 1789519 (N.D. Ill. Mar. 21, 2013) (same); *Johnson v. Pinstripes, Inc.*, 12 C 1018, 2013 WL 5408657 (N.D. Ill. Sept. 26, 2013) (same); *Haschak v. Fox & Hound Rest. Grp., et al.,* No. 10 C 8023, 2012 U.S. Dist. 162476, at

\* 2 (N.D. Ill. Nov. 14, 2012) (same); *Schaefer v. Walker Bros. Enters., Inc.,* 10 6366, 2012 U.S. Dist. LEXIS 65432, \*4 (May 7, 2012) (same).

76. Pursuant to 820 ILCS 105/12(a), Plaintiff and the Class are entitled to recover unpaid wages for three years prior to the filing of this suit, plus additional damages in the amount of two percent (2%) per month of the amount of underpayment.

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

A. judgment in the amount of all minimum wages due as provided by the Illinois Minimum Wage Law;

C. prejudgment interest on the back wages in accordance with 815 ILCS 205/2 and additional damages pursuant to the formula set forth in 820 ILCS 105/12(a);

D. reasonable attorneys' fees and costs of this action as provided by the Illinois Minimum Wage Law; and

E. such other and further relief as this Court deems just and proper.

Dated: October 16, 2015

        Respectfully submitted,

        /s/Douglas M. Werman
        One of the Attorneys for Plaintiff

Douglas M. Werman (dwerman@flsalaw.com)
Maureen A. Salas (msalas@flsalaw.com)
Sarah J. Arendt (sarendt@flsalaw.com)
Zachary C. Flowerree (zflowerree@flsalaw.com)
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Attorneys for Plaintiff